870 So.2d 250 (2004)
Roosevelt DANIELS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-5762.
District Court of Appeal of Florida, Second District.
March 26, 2004.
*251 James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Tiffany Gatesh Fearing, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
In this appeal, we are asked to determine whether a plea agreement for a probationary split sentence, in which the prison term is an upward departure from the guidelines, is a valid reason to impose an upward departure sentence upon revocation of probation when the original plea agreement did not include an express agreement as to sentencing upon revocation. We hold that the requirements of the guidelines compel the conclusion that an upward departure sentence is not authorized under these circumstances. This conclusion requires that we reverse the portion of the sentence resulting in actual prison time imposed on the appellant, Roosevelt Daniels, after the revocation of his probation because it was an illegal upward departure from the sentencing guidelines.

Facts and Procedural History
Daniels was originally charged with three counts of capital sexual battery and one count of lewd and lascivious activity with a minor. The date of the offenses was October 14, 1986. In January 1987, Daniels entered a negotiated plea of guilty to two counts of attempted capital sexual battery and two counts of lewd and lascivious activity with a minor. He was subsequently sentenced to thirty years' imprisonment on one count of attempted capital sexual battery (count one), followed by concurrent terms of fifteen years' probation *252 on the other three counts (counts two, three and four). This was an upward departure sentence under the sentencing guidelines in effect at that time. The guidelines scoresheet calculated the guidelines range at twelve to seventeen years. The only reason listed on the scoresheet for the departure referenced the plea negotiation.
With the benefit of gain-time, Daniels finished serving the thirty-year prison term imposed on count one in March 1999. Three years later, Daniels' probation officer filed an affidavit alleging that Daniels had violated his probation on counts two, three, and four by having unauthorized contact with a minor. After an evidentiary hearing, the trial court found that Daniels had violated his probation as charged and revoked his probation on counts two, three, and four.
The trial court sentenced Daniels to a term of thirty years' imprisonment on count two and fifteen years' imprisonment on counts three and four. The sentences were designated to run consecutively. The calculations on the scoresheet used for sentencing on the violation of probation were identical to the original scoresheet. The guidelines range was calculated at twelve to seventeen years, with seventeen to twenty-two years permitted by the one-cell probation violation bump.
Because all counts were scored on a single scoresheet, the trial court recognized that Daniels was entitled to credit for time served on count one as to the prison terms imposed upon revocation of probation for the other three counts. See Tripp v. State, 622 So.2d 941, 942 (Fla. 1993). Thus, against the total sixty years' imprisonment imposed on counts two, three, and four, the trial court granted Daniels credit of thirty years for time served on count one, which was expressed as a specific credit as to the thirty-year term imposed on count two.[1]See Hodgdon v. State, 789 So.2d 958, 963 (Fla.2001) (clarifying Tripp to hold that "a defendant who violates probation on multiple counts imposed consecutive to a prison term is entitled to credit for the time served on the prison term as to the entire sentence imposed on the probation violation"); see also State v. Witherspoon, 810 So.2d 871 (Fla.2002); Cook v. State, 645 So.2d 436 (Fla.1994). The result was an actual prison sentence of two consecutive fifteen-year terms.
The trial court also recognized that any sentence involving actual prison time would be an upward departure from the guidelines because Daniels had fully completed serving his initial upward departure sentence. As authority for the imposition of an upward departure from the sentencing guidelines, the trial court cited Williams v. State, 581 So.2d 144 (Fla.1991) (Williams I), and entered a written order stating its reason for the upward departure sentence as follows:
[D]ue to the fact that at the original sentencing on February 11, 1987, Defendant entered into an uncoerced negotiated plea agreement for an upward departure from the guidelines where Defendant agreed to plea [sic] to the stipulated lesser offenses for thirty (30) years Florida State Prison, because Defendant *253 was facing three life sentences with a twenty-five (25) year minimum mandatory.
Other than the terms of the original sentence, no other record of the terms of the original plea agreement was available to the trial court.
After the sentence was entered, Daniels' counsel filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). The trial court denied the motion.

Revocation of Probation
Daniels contends that the State failed to prove that he committed a willful and substantial violation of his probation. After a review of the record, we find that the evidence was sufficient to prove that Daniels committed a willful and substantial violation of his probation. Daniels' argument on this point does not warrant further discussion.

The Sentencing Issue
Computed on a single scoresheet, Daniels' original sentence consisted of a prison term of thirty years followed by three fifteen-year terms of probation, concurrent with each other but consecutive to the prison term. This original sentence was a "probationary split sentence," as defined by Poore v. State, 531 So.2d 161, 164 (Fla.1988), which consists of a prison term, none of which is suspended, followed by a term of probation. A probationary split sentence is distinguished from a "true split sentence," which consists of a total prison term with a portion of the term suspended and the defendant placed on probation for the suspended portion. Id.
It is well-settled that a negotiated plea is a valid reason to impose an initial upward departure prison sentence.[2]State v. Williams, 667 So.2d 191, 193 (Fla. 1996) (Williams II); Quarterman v. State, 527 So.2d 1380, 1382 (Fla.1988). The sentencing issue in this case presents a question of first impression: whether a plea agreement for a probationary split sentence, in which the prison term is an upward departure from the guidelines, is a valid reason to impose an upward departure sentence upon revocation of probation when the original plea agreement did not include an express agreement as to sentencing upon revocation. Daniels preserved this issue in his rule 3.800(a) motion, and our standard of review is de novo. See Wardlaw v. State, 832 So.2d 258, 259 (Fla. 2d DCA 2002).
A similar question has been answered in the context of a true split sentence. Under a true split sentence pursuant to a negotiated plea, where the actual prison portion of the sentence was an upward departure, the plea agreement is not a valid reason for imposition of an upward departure sentence upon revocation of probation unless the defendant specifically agreed in advance to imposition of a departure sentence upon revocation. McGlothlin v. State, 714 So.2d 640, 641 (Fla. 4th DCA 1998) (following Hosmer v. State, 523 So.2d 184 (Fla. 1st DCA 1988)); see Wardlaw, 832 So.2d at 259 (reaching the same result when the original sentence was not an upward departure); Lawrence v. State, 682 So.2d 582, 583-84 (Fla. 5th DCA 1996) (same). "[A]though a plea bargain may provide a valid reason for departure with respect to the initial disposition, it cannot be viewed as an implicit waiver of the guidelines with respect to sentencing subsequent to the initial disposition." *254 McGlothlin, 714 So.2d at 641 (quoting Hosmer, 523 So.2d at 186). Rather, an upward departure sentence upon revocation of probation is permitted only if "the defendant in his original plea specifically recognizes and agrees that, upon violation of his probation, he can receive an above-guidelines sentence equal to the probation portion of the split sentence." Lawrence, 682 So.2d at 583.
At Daniels' sentencing hearing, the State urged that Daniels' original negotiated plea justified an upward departure pursuant to Williams I, which held that upon revocation of probation, the court may impose an upward departure prison sentence for any reason for departure that existed at the time the defendant was placed on probation. 581 So.2d at 146. The State conceded that several district courts of appeal have held that an upward departure based on a plea agreement does not authorize a subsequent upward departure for a violation of probation, including McGlothlin, Lawrence, and Hosmer. The State argued that these cases should not be relied upon because they did not discuss the rationale articulated by Williams I. Specifically, the State distinguished Lawrence on the ground that it involved a true split sentence and thus was not controlling. The State argued that unlike a true split sentence, a probationary split sentence afforded the trial court greater flexibility in sentencing, citing, among others, Poore, 531 So.2d 161. The fact that Daniels' sentence was a probationary split sentence and not a true split sentence was the main reason offered by the State in order to justify the application of Williams I to the upward departure sentence upon revocation.
We do not agree that the rationale of Williams I justifies an upward departure sentence in this case. Williams I involved a sentence that was imposed against the defendant's will, and the reason for departure existing at the time the defendant was placed on probation was an escalating pattern of criminal conduct. 581 So.2d at 145. The court declined to impose a departure sentence at the initial sentencing and instead sentenced the defendant to probation. Upon revocation of probation, the court properly imposed an upward departure sentence for the reason that existed at the time the defendant was placed on probation. Id. at 146.
In Daniels' case, by contrast, Daniels' sentence was the result of a negotiated plea, and the only valid reason for an initial upward departure was his assent pursuant to the plea agreement. According to the record before us, the terms of the plea agreement are the terms of the original sentence. There is no suggestion that Daniels recognized and agreed that, upon violation of his probation, he could receive an above-guidelines sentence equal to the probation portion of his cumulative sentence. One might argue that Daniels, having agreed to probation over and above an upward departure sentence, implicitly assented to the condition that he would be sentenced to actual prison time upon revocation of probation. The contrary view suggests that the State and Daniels agreed to a nullity when they agreed to probation after serving the upward departure sentence. However, the guidelines are a limitation on actual prison time, not probationary terms. See Robbins v. State, 641 So.2d 934 (Fla. 2d DCA 1994). The guidelines were intended to establish uniform standards in determining prison sentences, with departures from the guidelines narrowly permitted. Fla. R.Crim. P. 3.701(b), (d)(11). The notion that a negotiated plea with respect to an initial disposition can act as an implicit waiver of the guidelines with respect to sentencing upon revocation of probation has been rejected. See Wardlaw, 832 So.2d 258; McGlothlin, 714 So.2d 640; Lawrence, 682 So.2d 582; Hosmer, *255 523 So.2d 184. In the context of a plea agreement, the cumulative prison sentence of all offenses computed on a single scoresheet may be upwardly departed from only to the extent specifically dictated by the agreement.[3] Nothing in Williams I justifies a different result when the sentence is a probationary split sentence instead of a true split sentence.
The State correctly observes that a probationary split sentence affords greater flexibility in sentencing upon revocation than a true split sentence. Indeed, Poore recognized that upon revocation of probation under a true split sentence, the court was limited to imposing a prison sentence equal to the suspended portion of the original prison sentence, whereas under a probationary split sentence, the court was limited only by the guidelines. 531 So.2d at 164. However, the trial court has no flexibility to circumvent the guidelines in sentencing upon revocation without a valid reason to upwardly depart, regardless of whether the sentence was a true split sentence or a probationary split sentence. As Poore explained, the guidelines limit "the cumulative prison term of any split sentence upon a violation of probation." Id. at 165.

The State's Applegate Argument
The State contends that because the terms of the original plea agreement of 1987 are unknown, Daniels failed to supply a sufficient record to demonstrate reversible error, citing Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979).[4] In response, Daniels correctly points out that the State has the burden to prove a valid basis for an upward departure sentence. Under the sentencing regime applicable to Daniels, the facts supporting an upward departure "must be credible and proven beyond a reasonable doubt." Scurry v. State, 489 So.2d 25, 28 (Fla.1986).[5] On appeal, if the reviewing court finds that one or more reasons for an upward departure are invalid, then the State has the burden to demonstrate beyond a reasonable doubt that the trial court would have imposed an upward departure absent the invalid reasons. Montgomery v. State, 489 So.2d 1225, 1227 (Fla. 5th DCA 1986). In this case, the sole reason apparent from the record for the imposition of the upward departure sentence was the original plea agreement. The State has failed to prove that its terms justified an upward departure, nor has the State demonstrated other valid reasons that could justify an upward departure.

Disposition
Accordingly, we affirm the revocation of Daniels' probation. We affirm the sentence *256 as to count two, in which Daniels was sentenced to thirty years with thirty years' Tripp credit for time served. This sentence was not an upward departure from the guidelines because it was not a sentence of actual prison time. We reverse the sentences for counts three and four (the consecutive fifteen-year prison terms), and we remand for resentencing. On remand, the trial court may impose community control or probation and conditions thereto within its discretion. The conditions of supervision may include conditions the trial court may deem appropriate to protect the public from Daniels, including current statutory conditions of sex offender probation.
Order of revocation of probation affirmed; sentence as to count two affirmed; sentences as to counts three and four reversed; and remanded for resentencing on counts three and four.
STRINGER and WALLACE, JJ., and THREADGILL, EDWARD F., Senior Judge, Concur.
NOTES
[1] Although Daniels actually served only twelve years of his thirty-year prison sentence, he was entitled to credit for gain-time in addition to actual prison time as credit for time served. See § 944.275(3)(b), Fla. Stat. (1985). Since the enactment of chapter 89-531, section 6, Laws of Florida, the revocation of probation or community control now serves to forfeit any gain-time previously earned. This and other changes to the sentencing laws are inapplicable to Daniels, who continues to be subject to the sentencing regime in effect on the date of his offenses, October 14, 1986.
[2] The Criminal Punishment Code, which is inapplicable to Daniels, does not recognize the idea of an "upward departure sentence." Rather, the statutory maximum for a given offense limits the length of a prison sentence for that offense. See § 921.002(1)(g), Fla. Stat. (2003).
[3] Under the guidelines, a sentence of actual prison time following additional violations is still possible for Daniels. In the event Daniels commits additional violations of probation, with each successive violation, the permitted sentencing guidelines range would increase one cell "bump" for each violation with the result that eventually the guidelines would permit actual incarceration.
[4] The State has previously conceded that the stenographic records from the original plea are unavailable. In its sentencing memorandum filed in the trial court, the State said:

The State made an attempt to obtain a transcript to determine if additional findings supporting an upward departure were made at the time of the original plea and sentencing, but stenographic records no longer exist. Therefore, the State can rely only on the original plea negotiation as the basis for an upward departure from the sentencing guidelines at this time.
[5] A subsequent amendment to the guidelines provided that the level of proof required for an upward departure was by a preponderance of the evidence. Ch. 93-406, § 5, Laws of Fla.